JOHN G. LONSDALE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19741.    Promulgated April 18, 1928.

*Abraham Lowenhaupt, Esq.,* and *Stanley S. Waite, Esq.,* for the petitioner.

*L. A. Luce, Esq.,* for the respondent.

662

666

LITTLETON: The issue is whether there was taxable income to the petitioner on account of the dividend declared by the National

Bank of Commerce and used under an agreement between the bank and the petitioner to pay for stock in the Federal Commerce Trust Co. The argument of the petitioner is that "as to those stockholders who accepted the proposal of the National Bank of Commerce for the organization of the Federal Commerce Trust Company, the dividend declared by the National Bank of Commerce was not payable in cash, but was payable in a pro rata interest in the stock of the Federal Commerce Trust Company"; and that since the dividend in question was payable in stock, the transaction here involved constituted a reorganization of the National Bank of Commerce under section 203 (c), Revenue Act of 1924, providing as follows:

If there is distributed in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

We do not understand that the petitioner is contending that the dividend in question should not be taxed for the reason that it is a stock dividend and, therefore, exempt from tax under the principle laid down in *Eisner* v. *Macomber*, 252 U. S. 189. Nor do we understand it to be contended that even though it should be found that the dividend was not a cash dividend, but a dividend payable in stock of the trust company, this would of itself exempt the dividend from tax as a stock dividend, since a dividend of one corporation payable in stock of another corporation may be taxable in the same manner as a cash dividend. *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176.

Was the dividend paid in stock of the trust company? At the time the dividend was declared, the trust company had not yet been formed and, of course, the bank did not have any stock in the trust company which it could use in liquidating the liability to its stockholders arising on the declaration of the dividend. Nor did the bank ever come into ownership of any of the stock of the trust company. What the bank had when the dividend was declared was a cash surplus sufficient to pay the dividend, and agreements from 93.82 per cent of its stockholders that the amounts to which they were entitled under the dividend declaration would be used to pay for stock in the trust company. The persons entitled to receive the dividend were the stockholders of the bank, and a majority agreed that they would allow it to be used in payment for stock in the trust company. We think it would not be possible, even disregarding form and considering only substance, to say that the dividend was paid in stock which the bank neither then, nor subsequently, owned. It may be true that

the bank would not have declared the dividend at this time had it not had agreements with the stockholders that cash would not be demanded, but that the liability of the bank to the stockholders would be met through the transfer of the bank's cash surplus appropriated for the purpose to the trust company and the issuance of stock of the trust company to trustees. It is also true that the stock of the trust company did not come into the hands of the stockholders of the trust company, and that no certificates of beneficial interest in such stock were issued to the stockholders, but the stock was issued to trustees who held the stock under a trust agreement by means of which the purpose in forming the trust could be accomplished, and evidence of the beneficial interest of the stockholders in such stock was shown only by an indorsement on the stock certificates. These facts, however, would not make the payment of the dividend a payment by the bank in stock of the trust company, which it did not then or subsequently own, and which stock was essentially different in character from the stock of the bank.

That which took place in this instance is clearly distinguishable from the cases of *United States* v. *Mellon*, 281 Fed. 645, and *United States* v. *Davison*, 9 Fed. (2d) 1022, on which petitioner places much emphasis. Those cases involved an issuance of stock dividends by the Gulf Oil Corporation. The facts in those cases and the reasons for holding the dividends exempt from tax are briefly stated in the syllabus accompanying the *Mellon* case, as follows:

Where a corporation, which was using its earnings in extending its business and was not in a financial position to declare or pay a cash dividend, in order to secure funds with which to pay existing indebtedness and to conduct its business, adopted a plan providing for the sale at par of an amount of stock equal to the outstanding stock to existing stockholders pro rata, and for the issuance to each purchaser, in addition to the stock purchased at par, 100 per cent. of extra stock, and where large stockholders, to insure the success of the plan, agreed to take and pay for shares declined by other stockholders, the extra stock issued to such a heavy stockholder, who had purchased stock other than his proportionate share, on other stockholders' refusal to subscribe therefor, *held* not subject to income tax, since the receipt of such stock did not increase his income; "income" being something coming to a man.

Plainly, the foregoing is far from being analogous to the situation before us. Likewise, *Theresa Zellerbach*, 2 B. T. A. 1076; *Eugene E. Paul*, 2 B. T. A. 150; *W. J. Hunt*, 5 B. T. A. 356; and *B. R. Norvell*, 6 B. T. A. 56, all involved instances where no second corporation was involved and are, therefore, distinguishable from the case under consideration for this reason as well as for others unnecessary to be mentioned.

Consistent with the argument that the dividend was paid in stock of the trust company, the petitioner contends that the dividend is

exempt from tax under the provisions of section 203 (c), *supra*, since the transaction in question constituted a reorganization within the meaning of section 203 (h) (1) (B), which reads as follows:

(h) As used in this section and sections 201 and 204—

(1) The term "reorganization" means * * * (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, * * *

But was there a transfer of assets by the bank to the trust company in the sense contemplated by the foregoing provisions? Of course, if we look only at the fact that the bank had certain cash which found its way to the trust company, and disregard the steps by which this was accomplished, it might be said that there had been a transfer of assets from the bank, and that after the transfer, such assets are in another corporation which is now controlled by the stockholders of the corporation from which the assets came. But apparently, the very purpose of the plan followed was to avoid the transfer or exchange of a part of the bank's assets in such a way that it would appear that the bank was forming a branch bank which the bank was prohibited from operating. Section 11737 (1), Revised Statutes of Missouri (1919) and *First National Bank* v. *Missouri*, 263 U. S. 640. What the bank desired was a corporation to carry on certain activities which were prohibited under its charter, and there is no evidence that the desired results were accomplished in any way that placed the bank in a position where it could not defend its action as having been carried out in a manner which conformed to the legal requirements under its charter and the Missouri statutes. The assets that passed to the trust company were assets legally owing by the bank to the stockholders after the dividend declaration, but which the stockholders had voluntarily agreed should be used by a committee representing them in payment for stock in the trust company. Under such circumstances, the assets that came to the trust company would in reality represent assets belonging to the individual stockholders and paid in by them for stock in the trust company. The Board is, therefore, of opinion that the transaction here in question does not constitute a reorganization such as would exempt the dividend from tax under the statute.

Finally, the petitioner says that he did not receive anything that he did not have before, and that, therefore, it can not be said that income has come to him which would be taxable. Even conceding that this was, in effect, a dividend payable in stock of the trust company, we think the petitioner's contention is unsound. That stock in the bank prior to the issuance of the dividend was not the same as stock in the bank plus stock in the trust company, after assets from

the bank had found their way to the trust company, is readily apparent. In the case of *Corsicana National Bank* v. *Johnson*, 261 U. S. 68, in which a situation arose involving a trust company which was formed in connection with a national bank similar to the plan followed in the case under consideration, the court said:

Because the bank and the loan company were distinct legal organizations, operating under separate charters derived from different sources, and possessing independent powers and privileges, we are constrained to hold that, notwithstanding the identity of stock ownership and their close affiliation in management, for some purposes they must be regarded as separate corporations, for instance, as being capable in law of contracting with each other.

The very fact that it was necessary to form the trust company because the bank could not perform the functions which it was desired to have the trust company perform, shows that stock of an entirely different nature was issued by the trust company from that issued by the bank. In *Marr* v. *United States*, 263 U. S. 536, in which the assets and liabilities of one corporation were transferred to a new corporation formed under the laws of another State, the stockholders remaining practically the same, the court, in holding that taxable gain resulted through the exchange said:

In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new.

The difference between the stock in the trust company and the stock in the bank was even more marked than in the foregoing case, for the reason that the trust company was formed in order to have done things which the bank could not do. The fact that the stock of the trust company could not be sold separate and apart from the stock of the bank does not alter the fact that such stock is something of value even though inseparably attached to the stock of the bank, and carries with it rights and powers that did not exist in the stockholders of the bank before the formation of the trust company.

In view of the foregoing, the Board is of the opinion that the action of the respondent in holding that the dividend in question constituted taxable income to the petitioner should be sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRUSSELL dissents.